GLEN OAKS CLUB, INC., Plaintiff, v. GLEN OAKS HOLDING Co., INC., et al., Defendants.

Supreme Court, Special Term, Kings County, December 27, 1948.

*Eugene Edward Fink* for plaintiff.

*McDermott, Turner & Hart* for Glen Oaks Holding Co., Inc., defendant.

FROESSEL, J. In an action to foreclose a second mortgage on real property, plaintiff moves (1) for summary judgment pursuant to rule 113 of the Rules of Civil Practice, (2) to strike out certain named defendants as unnecessary parties, and (3) for incidental relief; the second phase of this motion is unopposed and is granted. Glen Oaks Holding Co., Inc., the only defendant who has answered herein, and who will hereafter be referred to as the " defendant ", cross-moves for summary judgment dismissing the complaint upon the merits. Upon the argument, the attorneys for both sides, aside from the fact that by their respective motions they conceded that no triable issues are presented, definitely stated that no further facts could be produced, that a trial would serve no purpose, and a decision was asked for upon the record before me and the applicable law.

The mortgage sought to be foreclosed, with an accompanying bond, were made by defendant to Stillman Holding Corporation, on or about October 25, 1927, to secure $275,000 and interest.

The property covered by the mortgage is used and occupied by plaintiff as a golf club, pursuant to a lease. The said mortgage and bond were assigned, on January 3, 1928, to John Stillman, who assigned them on October 1, 1934, to Central Parkway Company, Inc., which, on May 27, 1946, assigned them to the plaintiff. All these assignments were duly recorded.

On August 29, 1935, defendant and plaintiff's assignor, Central Parkway Company, Inc., which was then the owner and holder of the mortgage, entered into an extension and spreading agreement whereby additional property was embraced and the time for the payment of the unpaid principal, to wit, $190,000, and interest from October 1, 1933, was extended to January 1, 1938. Section 47-a of the Civil Practice Act, which became effective September 1, 1938 (L. 1938, ch. 499), shortened the Statute of Limitations upon bonds and mortgages secured by real property to a period of six years. Unless this action is taken out of the statute by reason of the payment hereinafter discussed, this action would have been barred after September 1, 1944. It was commenced on April 23, 1948.

Defendant has pleaded the Statute of Limitations as an affirmative defense. In addition, there are various denials in the answer, but virtually all of these depend for their validity upon the sufficiency of the affirmative defense. In the answering affidavit, a claim is made concerning an alleged confidential and trust relationship between plaintiff, its assignor and the defendant, but such claim is conclusorily stated, and appears nowhere in the answer. In any event, it is undenied that the defendant by the aforesaid extension agreement obligated itself in 1935 to pay to plaintiff's assignor on January 1, 1938, the unpaid balance of $190,000 and interest, and that a written assignment of said bond and mortgage by plaintiff's assignor to plaintiff was made on May 27, 1946, pursuant to the authority of its stockholders, and was recorded on June 14, 1946.

On February 9, 1945, defendant paid $2,250 to plaintiff's assignor, Central Parkway Company, Inc., the then holder of the mortgage. Plaintiff contends that this payment was made on account of the mortgage. Defendant admits making the payment, but, as it also owed the Parkway Company $23,000 on a separate miscellaneous account, it claims that where a debtor is liable to a creditor on two or more debts, and makes a payment to the creditor without specifying to which debt it is to be applied, the payment does not have the effect of tolling the statute or of reviving an outlawed debt, unless an intent is

manifested that it shall be applied to one debt rather than to the other. (Restatement, Contracts, § 387; *Crow* v. *Gleason,* 141 N. Y. 489.) It thus becomes necessary to determine defendant's intent at the time it made the payment. For this purpose oral testimony is admissible. (*Matter of Fitch,* 270 App. Div. 227, 238.)

The affidavits before me show that said payment was made by check, but no notation as to the purpose of the payment was indorsed thereon. At the time of the payment, one Getz was the secretary of both the defendant and the Parkway Company. He applied $2,000 of the money to the payment of the mortgage and $250 to the separate miscellaneous account. Defendant claims that his allocation of the money was done without instruction or authority of defendant's board of directors, and that his position was not such that he would have the implied power of reviving an outlawed debt. It further urges that Getz was without apparent authority because he knew that he was not authorized to waive the defense of the Statute of Limitations. Defendant cites *Constant* v. *University of Rochester* (111 N. Y. 604, 615) for the proposition that knowledge which one acquires when acting for one principal may be deemed to remain with the agent when he acts, at the same time, for another principal. Without questioning the last proposition, it may be pointed out, conversely, that defendant was likewise charged with knowledge of how the payment was applied, because Getz was also defendant's secretary. In any event, a recital of the events preceding the payment furnishes a clear and unmistakable background for determining defendant's intent.

According to Harry M. Marks, a member of defendant's board of directors, whose affidavit is submitted in opposition to plaintiff's motion, Charles S. Aronstam, the then president of the Parkway Company, made a demand upon the defendant in April, 1944, and before the Statute of Limitations had run, for a payment of $2,250 " *on account of the second mortgage* ", which was then in default, " and he threatened foreclosure unless the payment was made." While Marks claims that Aronstam said the payment would be used to purchase a $3,000 mortgage which covered part of the premises herein, the use to which the Parkway Company put the money was of no concern to the defendant. He concedes the payment was demanded " on account of the second mortgage now in suit." Defendant was not able to meet Aronstam's demand. Marks then says: " The Board of Directors of the holding company [defendant] decided

to request the Parkway Company to withhold any action to foreclose the second mortgage and to wait, for the $2,250. payment demanded, until the holding company was in a position to make it, having due regard for '' its other commitments '' and that if the Parkway Company did not commence an action to foreclose the mortgage, the holding company would pay the amount demanded just as soon as it had sufficient money to make the payment. This action of the Board of Directors was communicated to Mr. Aronstam on the following day and he agreed to comply with the request of the Board and wait for the demanded $2,250.00 payment until the holding company had funds available to make it.'' Marks says that it was not until January, 1945, that the defendant had a balance of cash in excess of $2,250, and on February 9, 1945, its check for that amount was drawn to the order of the Parkway Company. He concedes, as does Alexander Rosenbaum in his opposing affidavit, that defendant's board of directors never took any further or different action with respect to the Parkway Company's demand after April, 1944, and it necessarily followed that its previous course of action constitutes its final action in this respect. It is therefore apparent from the above recital of the facts that the payment was made on account of the mortgage. It was for the exact amount demanded, and was sent as soon as defendant had sufficient funds to comply with the demand, and in pursuance of defendant's representation that if the Parkway Company did not foreclose, that sum of money would be paid as soon as defendant had it. In short, defendant's president and secretary carried out its board of directors' instructions to the letter, excepting as to the application of $250 to the separate miscellaneous account.

In the light of the foregoing, I am constrained to hold that the payment on February 9, 1945, operated to save this mortgage from the bar of the Statute of Limitations. Accordingly plaintiff's motion must be granted, and defendant's cross motion is denied. Settle orders on notice.