S. Samuel Di Falco, S.
In the proceeding for the settlement of the account of the executrix, two creditors have filed objections to the rejection of their respective claims by the executrix. The trial of the issues in relation to one of the claims has been completed. In this decision, the court will deal only with that claim.
The court is satisfied on the basis of all of the evidence, that the objectant, Rubin Kagan, loaned the decedent the sum of $5,000 during the year 1929. The decedent promised to repay the sum borrowed with interest. The decedent did not repay any part of this loan until January 1, 1950. Beginning on that date, and on the first day of each month thereafter up to the month preceding that in which the decedent died, he drew a check to the order of the objectant in the sum of $25. It does not appear whether the checks were actually delivered on the *196 first day of each month, but all of the checks were delivered and were cashed. The checks drawn prior to July 1, 1954 contained only the usual check number corresponding to the check stub number. However, beginning July 1, 1954, in a box printed in the upper left-hand corner of the check containing lines for specification of the items covered by that check, there was handwritten an additional number. The July 1, 1954 check had the written notation ‘1 55th check ’ ’. This check actually was the 55th check in the series which began on January 1, 1950. From that point on, the decedent numbered the checks consecutively from 55 to 101, except in 1956 when he gave two checks the number 82 and again in 1957 when he neglected to give the June check any number and gave the July check the number following that on the May check. The last check, dated July 1, 1958, was designated “ 101 checks ”, but it is conceded that in reality this check represented the 103d payment of $25 and that a total of $2,575 has been paid on account. The decedent died on August 3, 1958.
The executrix disputes the making of the loan, but she has offered no evidence to refute the testimony given on behalf of the objectant that the decedent admitted on several occasions and to different persons that he had borrowed $5,000 from the objectant and that he would return “ every cent with interest.”
The more serious argument arises out of the defense of the Statute of Limitations. There can be no doubt that the bar of the statute would have prevented the enforcement of the claim prior to January 1,1950. On that date the decedent made the first payment to the objectant. Neither that check nor any other check makes specific reference to the loan of $5,000. However, there was oral testimony linking the payments to the loan. The son of the objectant testified to conversations with the decedent during the years 1954 or 1955, in the course of which the decedent told bim that he was paying off some of the loan. ‘ ‘ He had paid a little back and that he would in the future pay it all back plus the interest that he owed [my father].” The same witness also stated that in 1958 when the witness questioned the decedent concerning the repayment of the money owed to his father, the decedent told him “ that he was paying it off monthly and that at the moment he was working on certain real estate deals that he was closing off and the moment those deals were through he would pay him back all the money in one lump sum plus the interest that he owed him.”
The rule governing the effect of partial payment in enlarging the time within which action can be brought on a claim, is not derived from statute but rather from judicial decisions. The *197 basis of the decisions was long ago stated thus: “ The reason is that a part payment made on account of a claim is an acknowledgment by the debtor of his liability for the whole demand; and from this acknowledgment a new promise on his part to pay the residue is implied. The undertaking of the debtor, as to the unpaid part of the debt, is thus, by a legal presumption, renewed and made to date from the time of the part payment.” (Harper v. Fairley, 53 N. Y. 442, 444.) Judge Earl’s restatement of the rule in Crow v. Gleason (141 N. Y. 489, 493) is one that is frequently cited with approval. He wrote: ‘‘ Part payment of a debt is not of itself conclusive to take the case out of the statute. In order to have that effect it must not only appear that the payment was made on account of a debt, but also on account of the debt for which action is brought, and that the payment was made as a part of a larger indebtedness, and under such circumstances as warrant a jury in finding an implied promise to pay the balance. If it be doubtful whether the payment was a part payment of an existing debt, more being admitted to be due, or whether the payment was intended by the party to satisfy the whole of the demand against him, the payment cannot operate as an admission of a debt so as to extend the period of limitation. If there be a mere naked payment of money without anything to show on what account, or for what reason the money was paid, the payment will be of no avail under the statute. The payment must be made under such circumstances as to show a recognition of a larger debt remaining unpaid.” The burden of proving that payment was made under such circumstances rests upon the claimant. (Crow v. Gleason, supra; Arkport State Bank v. Nutter, 282 App. Div. 412, 414.) Where interest is claimed upon the principal sum, the claimant has the burden of establishing such facts as to justify the implication of a promise to pay the interest, as well as the principal obligation. (Matter of Fitch, 270 App. Div. 227, 240.) It has been-held that in the determination of “ the purpose and intention with which a part payment is made, oral testimony is admissible”. (Matter of Fitch, supra, p. 238; Glen Oaks Club v. Glen Oaks Holding Co., 194 Misc. 206, 209.) Even without the oral testimony in this case, the checks in the handwriting of the decedent furnish evidence that they were payments on account of a larger obligation. True, the first checks in the series, alone and in themselves, evidence nothing except a payment of money. However, the payments continued to be made each and every month. When the 55th check was issued, it evidences the decedent’s close attention to the number of chocks delivered to the claimant and also the fact that this was *198 not to be the last to be so made and delivered. That close attention to the number of checks continued to be evidenced in the ensuing checks (except for the two minor lapses) right up to the time of the decedent’s last illness. The logical inference is that these checks were intended as payments on account of a larger indebtedness. It is highly unlikely that one would be so careful to keep track of the number of payments and to record them for the benefit of the payee if one were merely making gifts of money. There is not the -slightest evidence in this record that there was ever any financial transaction between these two persons other than the $5,000 loan. Hence, the checks could fairly and reasonably be regarded only as payments on account of this loan.
When we turn to the oral testimony, the decedent’s admissions to the son and the wife of the objectant clearly reveal his intention to apply these payments to the outstanding loan. The objectant’s wife was the decedent’s sister. They had several conversations respecting the loan and its repayment. She talked with the decedent immediately after receiving the first check. The objectant’s son talked with him at later periods. The decedent stated that he was paying off the loan monthly. This oral testimony confirms the fair implication to be drawn from the checks themselves.
The objectant demands payment of the balance due on the note and interest thereon. His claim is listed in the account in the total sum of $10,734.01 and his objections to the account confirm, rather than dispute, the accuracy of that report of his claim. That figure patently includes interest, but the method of arriving at the total figure is nowhere disclosed. The original claim was not produced. In other words, neither in the official record nor in the briefs is there any indication whether the claimant had applied the payments to principal or interest or from what time the interest computations were made in the claim. The object-ant’s brief concludes with a request for allowance of the claim 61 with interest ’ ’, but neither of the parties devoted any attention on the argument to the separate question of interest on the claim, notwithstanding the fact that the interest item in the claim exceeds the principal. In cross-examining one witness, the attorney for the executrix elicited the acknowledgment that the total of the checks for any one year exactly equals 6% interest on a loan of $5,000, but it was not clear at that point whether he was insinuating that the $5,000 figure had been manufactured so as to have some relation to the annual payments of $300, or whether he was suggesting that the payments might represent *199 interest payments. In any event, the question of interest must necessarily be decided by the court even though it has received only passing mention by counsel.
A payment of interest on a debt will toll the statute with respect to the principal obligation. (Matter of Consalus, 95 N. Y. 341, 345; Roe v. Mills, 223 N. Y. 623; Heidenreich v. Sutter, 254 App. Div. 620; Matter of Fitch, 270 App. Div. 227, 236, supra.) However, the converse is not necessarily true. A payment on account of principal does not in every case toll the statute with respect to interest. In Matter of Fitch (supra), the decedent, a mother who had borrowed money from her daughter and who had set up books of account showing the principal and interest due on the loan, made a payment on her daughter's income tax obligations. A corresponding credit was made in her own books on the debt owed to her daughter. Both mother and daughter had acquiesced in the transaction. The court held that this constituted a part payment on the obligation which lifted the bar of the Statute of Limitations with respect to the principal debt. Interest was not allowed, however. On that question, the court found it significant ‘1 that at no time did the decedent indicate any intention to pay interest thereafter by entering as a debit in the interest account any accrued interest ” (p. 240).
Arkport State Bank v. Nutter was twice before the Appellate Division (282 App. Div. 412; 284 App. Div. 86). On the first trial the court had directed a verdict for the plaintiff for the unpaid balance of principal, $517, and all accrued interest thereon, a total of $7,286.02. The judgment was reversed and a new trial ordered. Said the court: “We are not unmindful of the general rule that part payment of principal ordinarily tolls the statute as to both principal and interest unless the debtor expressly disavows the interest. The circumstances here, however, are such that we are unable to say as a matter of law that from such payment [of principal] the decedent made a new promise to pay the entire debt including interest. In order to toll the statute such further payment must have been made under such circumstances as would warrant a jury in finding an implied promise to pay the entire debt. * * *. The mere fact that part payment was made by the decedent during his lifetime and within the statutory period is not enough. The burden was upon the plaintiff to show that it was made under circumstances from which a promise may be inferred to pay the entire debt including interest”. (282 App. Div. 412, 414.) The court ruled that it was for the jury to say whether a promise to pay interest could *200 be implied from the circumstances. On the second trial, the plaintiff was again successful, the jury having found in its favor. Three witnesses testified to statements made by the decedent wherein he admitted that the plaintiff had a large claim for interest. The court said: “ If the testimony of Halton, Asmuth and Dew as to their conversation with the decedent in March or April, 1947, was competent, it was only so to support plaintiff’s claim that the 1945 payment was a new promise to pay the interest. The promise, if made, was not in writing and consequently did not toll the statute. (Civ. Prac. Act, § 59.) ” (284 App. Div. 86, 87-88.)
In the pending case there is nothing on the face of the checks to indicate whether the payment was of principal or interest. What writing there was indicates a payment on account of the principal obligation. The decedent would not have numbered them “ 55th check ”, “ check 74 ”, “ check 98 ”, and so forth, if each check were intended to represent interest for one month. Moreover, the objectant’s own witness testified that the decedent said “ that he was paying [the money he owed my father] off monthly.” Oral evidence is admissible only to clarify the purpose and intent with which a payment is made, not to supply a separate acknowledgment or promise. Here the evidence does not indicate in any way that the payment was of interest; on the contrary, it indicates a payment on account of principal. The testimony of the decedent’s promise to pay the interest which fell within the bar of the statute relates to a separate oral promise. Since the promise is not “ in a writing signed by the party to be charged thereby” (Civ. Prac. Act, § 59), it is insufficient to take the matter out of the operation of the statute (Arkport State Bank v. Nutter, 284 App. Div. 86).
The court, therefore, finds that the decedent made payments on account of the loan, that the payments were made under such circumstances as to justify the implication of a promise to pay the balance of the loan. The loan carried interest at the legal rate, no other rate having been specified. The objectant has failed to sustain the burden of proving that the payments were made under such circumstances as to justify the implication of a promise to pay the interest that accrued prior to January 1, 1950. What the courts have called the “ renewed undertaking ” of the decedent has its origin on that date, and the implied promise to pay the debt carries with it the promise to pay interest from that date. (Matter of Searles, 271 App, Div. 889.)
The objections raise several questions which relate to the administration of the estate. Only one need be considered. The widow has distributed to herself assets having a value of nearly *201 $200,000 without reserving any money to pay contested claims. She will be surcharged in an amount sufficient to pay this claim in full.
There remains for future hearing the issues raised by the other rejected claim. An intermediate decree may be submitted on notice directing payment of the objectant’s claim.